## ·Hartman's Appeal.

A surety for stay of execution is not precluded thereby, from becoming a purchaser of the judgment from the plaintiff therein.

Where, therefore, a surety for stay of execution purchased the judgment from the plaintiff therein, took an assignment thereof, and had it marked for his use on the docket, *it was held,* that he was entitled to the proceeds of a sheriff's sale of the real estate of the defendant in the said judgment, *in* preference to the claim of a judgment creditor, whose lien on the same real estate was obtained subsequently to the entry of security for stay of execution.

*June* 18.   This was an appeal by Jacob Hartman, administrator of Daniel Hartman, deceased, who was one of the legatees of Yost Hartman, deceased, from the decree of the Court of Common Pleas of Berks county, distributing the money arising from the sale, by the sheriff, of the real estate of Adam Miller.

On the 4th of June, 1841, John D. Knabb, Samuel D. Knabb, and Daniel D. Knabb, obtained a judgment by confession against Adam Miller and John L. Rightmyer, trading under the firm of Miller & Rightmyer, on a promissory note given by the defendants to the plaintiffs.   On the 5th of July following, Jacob De Turk entered into a recognisance, as security of the defendants for the payment of debt, interest and costs, to entitle them to a stay of execution.   Adam Miller, one of the defendants in the judgment, being one of the executors of Yost Hartman, deceased, settled his account in the Orphans' Court ; and a balance appearing to be due, and in the hands of the said executor, a certified transcript, or extract of the amount of the said balance, was filed, at the instance of the legatees of the said decedent, on the 8th of July, 1842.   On this transcript, or lien, a *sci. fa.* was issued at the instance of the legatees, who obtained a judgment thereon, on the 10th of November, 1845.   On the 8th of April, 1846, Jacob De Turk, the surety for stay of execution on the Knabb judgment, called on Mr. Smith, their attorney, and offered to pay the judgment, provided it were assigned to him.   Mr. Smith, thereupon, with the consent of the Knabbs, accepted the proposition, received the amount then due on the judgment, assigned it to De Turk, and marked it for his use on the docket of the Court of Common Pleas.   De Turk, after reviving the judgment by *sci. fa.,* issued writs of execution, under which the real estate of Adam Miller was sold, and the proceeds of sale paid into court by the sheriff for distribution.   The fund in court being insufficient to pay both judgments, the court decreed the same to Jacob De Turk.   From this decree, the legatees of

Yost Hartman appealed, and assigned the decree of the court below for error here.

*Barclay* and *Rhoads*, for appellant.—Bail for stay of. execution, who pays off the judgment, and takes an assignment thereof, is not entitled to be subrogated to the rights of the plaintiff in the judgment, so as to have priority over subsequent judgment creditors. Bail for stay of execution have no right of subrogation. It has been decided in Armstrong's Appeal, 5 Watts & Serg. 352, that one who becomes surety of a defendant in a judgment, to entitle him to stay of execution; and who, by reason of such liability, afterwards pays the judgment, is not entitled to be substituted as plaintiff, and have priority over subsequent judgment creditors; Bank U. S. *v.* Winston's Executors, 2 Brock. 252; Lathrop & Dale's Appeal, 1 Barr, 519; Burns *v.* Huntingdon Bank, 1 Penna. Rep. 395; Potts *v.* Nathans, 1 Watts & Serg. 155. Fleming *v.* Beaver, 2 Rawle, 132, decides that an actual assignment is nothing; the *right* of substitution is every thing, and actual substitution nothing; Armstrong's Appeal, 5 Watts & Serg. 356; Rittenhouse *v.* Levering, 6 Watts, 190; Himes *v.* Keller, 3 Watts & Serg. 404. Party claiming to be substituted must always prove that he was a mere surety; Gosweiler's Estate, 3 Penna. Rep. 203; 4 Johns. Ch.

*Pearson* and *Smith*, for the appellee, contended that Jacob De Turk, for whose use the judgment against Miller and Rightmyer was marked on the docket of the Court of Common Pleas, claimed the money arising from the sheriff's sale, not as a surety, asking to be subrogated to the rights of the creditor, but as a purchaser of the judgment.

Here the money was paid by De Turk to Knabb, and an actual assignment of the judgment was executed by Knabb's counsel to De Turk. The case, therefore, differs from all those cited on the other side. Any third person might have purchased the judgment, and thus, standing in the shoes of the creditor, would, as a matter of course, have been entitled to all his rights.

Our courts have always encouraged facilities in the transfer of choses in action, when made fairly and for a full consideration; and there is nothing in the policy of the law to discountenance it. Surely De Turk had the same right as any other would have had, to purchase this judgment; and there is nothing in his position as bail for a stay of execution to render him incompetent. Suppose the real estate had been sold under an execution before De Turk

paid the money to Knabb, the proceeds of sale would have been applied to the extinguishment of this lien, notwithstanding the fact that bail had been entered for a stay; and thus the bail would have been relieved, although it would have operated to the prejudice of the subsequent lien creditor; Carnighan v. Brewster, 2 Barr, 41.

The fallacy of the argument on the other side is, in assuming that we invoke the action of the court in our favour, and are asking to be subrogated. But such is not our position; we have already been subrogated by the act of the judgment creditor; Ley v. Huber, 3 Watts, 368. Infinitely less equity is required to induce a chancellor to withhold his interference than to induce him to act. This principle is applicable here.

If the court should decide that the bail for a stay of execution is precluded by his position from becoming a purchaser of the judgment, and entitled to the rights of the creditor, the only effect will be that parties will resort to secret methods of accomplishing the same object. Nothing will be easier than for the bail, when the stay is about expiring, to get a friend to pay the creditor, and take a transfer of the judgment, and then proceed to a sale by execution. In such a case the proceeds of sale would be decreed to the nominal holder of the judgment, and the bail be relieved, to the prejudice of the younger creditors. Policy would seem to forbid, that men should be driven to secret methods of accomplishing any object which is not in itself immoral.

It cannot be said here, that the payment by De Turk to Knabb extinguished the judgment. Extinguishment is a question of intention; 3 Watts & Serg. 279. Here it was clearly the intention of the parties that the judgment should not be extinguished, as was evidenced by their acts at the time the payment of the money to Knabb took place.

June 24, 1847. COULTER, J.—At first blush Armstrong's appeal, 5 Watts & Serg. 352, would seem to rule the cause in hand; but a close scrutiny will deliver the latter from the dominion of the former. In Armstrong's appeal the bail had *paid* the judgment for which he had entered into recognisance to obtain the stay of execution; in this case, he did not pay it, nor was it the intention of the parties that the judgment should be considered as paid, but clearly the contrary. When the judgment is paid by the act of the bail, it requires the aid of the court to keep it alive, in favour of a meritorious surety; which intervention of the court being merely, in

its origin at least, gratuitous, but now well regulated by equitable discretion, will not in general be exercised to the prejudice of the rights of third persons. Thus by the very act of payment, the rights of the subsequent judgment creditors attach; and the court would never exercise its high power to restore and keep alive that which was dead and inoperative, without strong and imposing equity. In the case of Armstrong's Appeal, the court ruled that such equity did not exist, in favour of bail to procure the stay of execution, he being considered in the light of a volunteer. In the present case, however, the bail did not pay, but purchased the judgment from the plaintiff; and it was in pursuance of that purchase assigned to him by the plaintiff's attorney with the plaintiff's consent, and the judgment marked for his use before the sale of the property on which the money in court was made. Who was injured by this contract between the owner of the judgment and the recognisor? Can any power, equitable or legal, torture that transaction into a satisfaction of the judgment against the consent of the parties? De Turk, the recognisor, was not party or privy to the judgment. He was a mere volunteer after the judgment was perfect. What principle of law, then, prevented him from buying the judgment and having it transferred to him?· I am certainly aware of none. In this point of view, it was not necessary that the court should subrogate De Turk. The plaintiff in the judgment had substituted him, and transferred to him all his rights growing out of it; and in the collection of the judgment, he was entitled to stand in the shoes of the plaintiff, although not the legal assignee under the hand and seal of the plaintiff, according to the form of the act of Assembly; yet he was the equitable assignee, who is always regarded in our courts as entitled to their protection. Most of the choses in action which have been transferred and come into court, are for the use of the transferree: who is only the equitable holder, but who is always allowed to take the money out of court produced by the suit. Indeed, the court would at once restrain the legal plaintiff from doing any act to his prejudice.

To my mind, this case does not present the aspect of one in which the equitable power possessed by the court of substitution need be invoked by De Turk; although that was the basis of the argument against him. The question is rather, whether the court will restrain the equitable assignee of the oldest judgment creditor, from taking the money out of court, because he happened to enter into recognisance to procure the stay of execution allowed by law to the defendant, five years before he purchased the judgment, and

which stay had expired more than three years before the other creditor claiming the money had procured a judgment. In the case of Carnighan *v.* Brewster, 2 Barr, it was decided that the first judgment was entitled to the money, and that the law made the appropriation, although it was secured by recognisance of bail, to obtain stay of execution. And how the circumstance of the judgment being transferred to the bail could make any difference, I confess I am at a loss to perceive.

· At the time De Turk entered into recognisance, and for a long time afterwards,—long after the stay had expired, this was the only lien; and it was perhaps on the faith of that circumstance, that he entered into the recognisance. This would not have injured other judgment creditors, because there were none to injure till after the expiration of the stay. There appears to be no good reason why he ought not to take the money out of court on the judgment, which he honestly purchased and paid for, it being the oldest lien.

Decree affirmed.